UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO YATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT,<br><br>　　　　Defendant. | Case No. 16-cv-01077-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 116 |

## INTRODUCTION

Pending before the Court is Defendant West Contra Costa Unified School District's ("Defendant") Motion for Summary Judgment. Mot., Dkt. No. 116. Plaintiff Fernando Yates filed an Opposition (Dkt. No. 118), a Declaration (Dkt. No. 123), a Separate Statement of Facts (Dkt. No. 122), an Addendum (Dkt. No. 124), a Second Addendum (Dkt. No. 125), and "Exhibits" (Dkt. No. 128). Defendant filed a Reply (Dkt. No. 126), as well as objections to Plaintiff's Exhibits (Dkt. No. 129). The Court previously found this motion suitable for disposition without oral argument and vacated the July 27, 2017 hearing. Dkt. No. 127. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion for the following reasons.

## FACTUAL BACKGROUND

Plaintiff has been teaching for more than 28 years. *See* Yates Decl. ¶ 3, Dkt. No. 123; Murphy Decl., Ex. A (Pl.'s Dep.) at 28:23-24, Dkt. No. 116-2. In 2001, he had brain surgery to remove a tumor; neither the tumor nor the surgery affected his ability to teach. Yates Decl. ¶ 3. He has worked as a teacher in several school districts since the surgery. *Id.* He received "an extremely positive letter" from a middle school principal in May 2014. *Id.* & Ex. A.

On February 25, 2014, Plaintiff was hired as a part-time temporary teacher for the

remainder of the 2013-14 schoolyear. Cotton Decl. ¶ 3 & Ex. 1, Dkt. No. 116-3. In March 2014, Plaintiff became a full-time probationary teacher under contract with Defendant, and was assigned to teach Spanish at El Cerrito High School at the beginning of the schoolyear. *Id.* ¶ 4 & Ex. 2.

At the beginning of October 2014, Plaintiff informed the principal of El Cerrito High School—David Luongo—that Plaintiff could not hear out of his right ear "because of [his] tumor and surgery [he] had many years before." Yates Decl. ¶ 4; Pl.'s Dep. at 39:13-24. Plaintiff asked to arrange his classroom to have more space between him and his students as an accommodation. Yates Decl. ¶ 4; Pl.'s Dep. at 40:18-21. Luongo did not respond to Plaintiff's request, and never provided this accommodation. Yates Decl. ¶ 4; Pl.'s Dep. at 42:22-43:6. This was the first time in his teaching career that Plaintiff had ever requested any accommodation; in other positions, he had always had "plenty of space." Pl.'s Dep. at 28:1-14; *see also id*. at 41:12-15 (Plaintiff had not previously informed anyone that he needed an accommodation at this position). "As a classroom teacher . . . [Plaintiff] would have had the ability and authority to rearrange the placement of student desks in his classroom to fit his needs or teaching style. No administrative permission would have been required." Luongo Decl. ¶ 5, Dkt. No. 116-4. Plaintiff testified it was his understanding that he was not free to rearrange the desks. Pl.'s Dep. at 40:22-41:41:5. Luongo never spoke to Plaintiff again about the request for accommodation, his surgery, or his hearing issues. *Id.* at 43:14-20. Plaintiff never made another request for accommodation, from Luongo or anyone else employed by Defendant. *Id.* at 47:8-18.

On October 9, 2014, Luongo emailed Cheryl Cotton (Defendant's Director of Human Resources), stating: "We are getting a large number of concerns coming up regarding probationary teacher Fernando Yates. He will definitely be a non-reelect for next year, but do we have options to release him sooner if necessary?" Yates Decl. ¶ 5 & Ex. 2; Luongo Decl. ¶ 3. Luongo "had received negative comments from students about [Plaintiff's] performance in the classroom." Luongo Decl. ¶ 3. Cotton replied: "He is on a probationary contract so this is the year to non-reelect him. You can work on disciplining him out, but coaching support will get you farther if he stays through the rest of the year." Yates Decl. ¶¶ 5-6 & Ex. 2. Neither Cotton nor Luongo refer to Plaintiff's brain surgery, tumor, deafness, or request for accommodation. *Cf. id*. ¶ 5 (declaring

2

Luongo indicated concerns regarding Plaintiff's brain surgery). Plaintiff testified Luongo treated him differently after learning about his brain surgery: Luongo came to Plaintiff's classroom once to ask whether Plaintiff had forgotten he was supposed to have a meeting; Luongo did not greet Plaintiff in the same manner he used to greet him; Luongo's face "changed completely." Pl.'s Dep. at 54:2-21.

On October 16, 2014, Plaintiff forwarded Cotton an email from the California Commission on Teacher Credentialing ("CCTC"), indicating Plaintiff's teaching credentials had been suspended as a result of his being out of compliance with his child support agreement. *See* Yates Decl. ¶ 8; Cotton Decl. ¶ 5 & Ex. 3. Two days earlier, Cotton had emailed Ken Whittemore stating she had received a call that day from Luongo, informing her that Yates' teaching credentials had been suspended since September 1, 2014, that Defendant was never notified, and that the County also had not been notified. Cotton Decl. ¶ 6 & Ex. 4. Whittemore was Defendant's Assistant Superintendent. Cotton notified Whittemore that she was placing Plaintiff on unpaid leave "until he is able to resolve [his] credentialing issue." *Id.*; *see also* Pl.'s Dep. at 78:5-15 (testifying he was placed on administrative leave in November because his license was suspended and he was required to provide a fitness to work letter); Murphy Decl., Ex. C (Def.'s Response to Interrogs.) at No. 2 ("Plaintiff was placed on unpaid administrative leave during periods his teaching credential was suspended" by CCTC); Def.'s Resp. to Interrogs. at No. 9 (Plaintiff was placed on administrative leave when Defendant learned his teaching credential had been suspended on or around October 14, 2014).

Once the credentialing issue was cleared, Defendant directed Plaintiff to return to his position effective October 21, 2014. Cotton Decl. ¶ 7 & Ex. 5. Plaintiff did not return to work as directed. *Id.* ¶ 8 & Ex. 6; Luongo Decl. ¶¶ 8-9. Instead, "Plaintiff decided to terminate his employment relationship with [Defendant], and . . . sent an email to . . . Cotton . . . indicating that he was leaving his position at El Cerrito High School." Yates Decl. ¶ 7. Plaintiff indicated he was resigning for "family personal reasons." Cotton Decl. ¶ 9 & Ex. 7 (Plaintiff informed Cotton that he was leaving his position "effective October 24, 2014, for family personal reasons").

Cotton "warned Plaintiff on October 23, 2014, that pursuant to California Education Code

3

[§] 44420, his failure to fulfill his contract of employment could lead to adverse action by the CCTC." Yates Decl. ¶ 7; Cotton Decl. ¶ 10 & Ex. 8. Cotton directed Plaintiff "to continue to report for duty and fulfill your contractual obligations until a suitable replacement can be found. In the event that a suitable teacher is hired to fill your position during the school year, you will be notified . . . and released from your contractual obligations." Cotton Decl., Ex. 8. Plaintiff responded to Cotton: "Instead of my resignation, I am requesting a leave of absence for family personal reasons IMMEDIATELY." *Id.* Plaintiff reiterated his request for leave "for family personal reasons" several days later. *Id.* ¶ 11 & Ex. 9. Plaintiff was not entitled to a leave of absence because he had not established eligibility for any type of statutory or contractual leave. *Id.* ¶ 11.

On November 1, 2014, Plaintiff's union representative Rhem Bell notified Defendant that Plaintiff wished to rescind his request for leave and to return to work. Yates Decl. ¶ 9; Cotton Decl. ¶ 12 & Ex. 10. Cotton, Plaintiff, and Bell met on November 14, 2014. Yates Decl. ¶ 10; *cf.* Pl.'s Dep. at 44:8-21 (this was not an "in person" meeting); *id.* at 80:24-82:17 & Ex. 11 (discussing November 14th meeting and Plaintiff's email of the following day). At that meeting, Cotton for the first time asked Plaintiff to provide a "fitness to work letter." Pl.'s Dep. at 81:24-82:17; *see also* Def.'s Resp. to Interrogs. at No. 3 (Human Resources requested fitness to work letter after being informed that Plaintiff had undergone brain surgery, "coupled with complaints that had been received from students concerning plaintiff's in class conduct and behavior.").

Plaintiff asked Dr. Spetzler, "the doctor who saved [his] life," to provide this letter, and forwarded it to Defendant. Pl.'s Dep. at 84:3-22 & Ex. 12. On November 18, 2014, Dr. Spetzler wrote that Plaintiff "has been under my care since having undergone brain surgery in 2001. He has made a full recovery and is cleared to work with no limitations." *Id.*, Ex. 12 (Spetzler Ltr.).

After Plaintiff provided Dr. Spetzler's letter to Defendant, he was directed to return to work. *Id.* at 84:24-85:1. Plaintiff never returned to work. *Id.* at 76:22-77:1 (Plaintiff never returned to work after his credentials were reinstated in October 2014); *id.* at 91:11-13. Plaintiff testified that he tried to turn in an official resignation letter to Cotton on November 21, 2014, but that Cotton told Plaintiff he would be working as a substitute teacher. Pl.'s Dep. at 85:2-86:10

4

(agreeing Cotton did not describe this as a demotion, but arguing it was a demotion based on the responsibilities of substitute teachers); Yates Decl. ¶ 11; Cotton Decl. ¶ 15. Cotton asked Plaintiff to work as an itinerant teacher after he failed to return to his position at El Cerrito High School because Defendant hired a teacher to replace him at El Cerrito High School. Cotton Decl. ¶ 16. Plaintiff was under contract, therefore his salary and benefits were not affected by the assignment—"it was not a demotion." *Id.*[1] Plaintiff declares Cotton handed him a form letter of resignation, effective June 2015, and made him a verbal promise to continue honoring the contract for the remainder of the school year once he provided the fitness to work letter. Yates Decl. ¶ 10.

On the evening of November 20, 2014, Plaintiff emailed Cotton and Whittemore, with a subject line "Complaint", the address of the U.S. Equal Employment Opportunity Commission ("EEOC"), and the following text: "Dear Sir or Madam: The purpose of this letter is to inform you that I have been placed on 'unpaid administrative leave' because on 2001, I had brain surgery. Regardless of the fact that I provided a[s] requested by [Defendant], [a] 'fitness to work letter,' they continue to refuse to pay my wages." *Id.*, Ex. 4; *see also id.* ¶ 12 (declaring Plaintiff submitted a discrimination complaint to the EEOC on November 20, 2014).

On December 2, 2014, Cotton emailed Plaintiff directing him to contact the substitute office for a placement that same day, through the week to substitute for a mathematics teacher at DeJean Middle School. Yates Decl. Ex. 5; Pl.'s Dep. at 30:1-9. Yates did not accept this assignment, which he believed was a demotion. *See* Yates Decl. ¶ 13. When Plaintiff continued to fail to report to work, Defendant entered into negotiations with Bell concerning Plaintiff's position. Cotton Decl. ¶ 17. Several settlement agreements were proposed, including one in which Plaintiff would resign and Defendant would agree not to report his abandonment of the position to the CCTC. *Id.* On December 12, 2014, Bell emailed Cotton, stating Plaintiff "would like to resign effective today. Would the District be willing to release him from his contract

---

[1] In addition, Plaintiff accuses Defendant of "blatantly [lying]" in its separate statement for describing the position as that of "itinerant" rather than "substitute" teacher. *See* First Addendum at 1; *see also* Opp'n at ECF p. 9 (arguing the positions are different, and that there is evidence to support Plaintiff's position was that of substitute, not itinerant, teacher). He fails to establish there is any distinction between these two terms, much less a material distinction between such positions.

5

without reporting such to CCTC?" Cotton Decl. ¶ 17 & Ex. 13. The parties subsequently abandoned settlement negotiations. *Id*. Yates declares that Whittemore "threatened" to report him to CCTC unless he withdrew his EEOC Complaint. Yates Decl. ¶ 14.[2] Yates also declares he was demoted to a substitute position on November 2014 in retaliation for filing his initial EEOC complaint. *Id*.

On March 6, 2015, Defendant sent Plaintiff a letter giving him notice that it would not reemploy him for the following school year. Cotton Decl. ¶ 18 & Ex. 14; Yates Decl. ¶ 15.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving

---

[2] In July 2015, an individual named Mary Keaney associated with a law firm wrote to Cotton that she was "concerned that the District has some exposure on the retaliation charge due to the district's offer to forego the CCTC reporting in exchange for Mr. Yates' withdrawal of the initial EEOC charge." Yates Decl., Ex. 5; Opp'n, Ex. 6. Keaney indicated the District had discretion to report the abandonment, but that the offer to forego that right in exchange for Plaintiff's release of his own rights "could be problematic." *Id*. (both). She asked for more information. *Id*. Plaintiff does not lay any foundation for the information in this document, which Defendant inadvertently produced in discovery. Plaintiff does not show he has personal knowledge of the facts in the document or show he is competent to testify about the matters in the document. *See* Fed. R. Civ. P. 56(c)(4). As such, this email does not constitute competent evidence of any fact relevant to this motion for summary judgment. It also may constitute hearsay if Plaintiff relies upon it to prove the truth of the matter asserted therein.

6

party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotations omitted).

Additionally, at the summary judgment stage, parties must set out facts they will be able to prove at trial. At this stage, courts "do not focus on the admissibility of the evidence's form . . . . [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted). "While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted). Accordingly, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

7

**DISCUSSION**

Plaintiff asserts two claims: a claim for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and a retaliation claim under the ADA. *See* Second Am. Compl. ("SAC"), Dkt. No. 52. First, Plaintiff alleges Defendant regarded him as being disabled due to deafness in his right ear and/or his brain surgery, failed to accommodate his disability, and demoted him to the position of substitute teacher because of his disability. *See id.* ¶¶ 18-21. Second, Plaintiff alleges Defendant retaliated against him for "objecting" about being demoted by placing him on unpaid administrative leave and threatening to report his credential to the CCTC. *Id*. ¶¶ 25-28. The Court evaluates whether a triable issue of fact exists with respect to either claim.

**A.    ADA Discrimination**

Whether he is asserting a disparate treatment or a failure to accommodate claim, Plaintiff bears the burden of establishing a prima facie case for disability discrimination under the ADA by establishing a triable issue of fact exists that he is disabled, he is a qualified individual with a disability, and he suffered an adverse employment action because of his disability. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam) (failure to accommodate); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993) (burden of proof is on ADA plaintiff). If Plaintiff establishes a triable issue of fact exists as to each of these elements, the burden shifts to Defendant to establish a legitimate, non-discriminatory reason exists for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnel-Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)). If Defendant meets its burden, Plaintiff then must show the articulate reason was pretextual. *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

1.    <u>Evidence Plaintiff is Disabled</u>

To establish he is disabled under the ADA, Plaintiff must show he has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. §

8

1630.2(g); *see also Fraser*, 342 F.3d at 1038. Plaintiff alleges he is disabled due to loss of hearing and/or brain surgery, and Defendant regarding him as being disabled as a result of having such impairments. *See* SAC.

First, there is no evidence before the Court that either Plaintiff's hearing loss or his brain surgery substantially limits one or more of his major life activities. In determining whether an impairment is substantially limiting, the court must look at the "nature, severity, duration, and impact" of the impairment. *Fraser*, 342 F.3d at 1039; *see also Toyota Motor Mfg., Ky., Inc., v. Williams*, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment substantially limits a major life activity."). "Substantially limits" has been defined by regulations as "unable to perform" or "significantly restricted." *Sutton v. United Airlines, Inc*., 527 U.S. 471, 491 (1999) (citing to 29 C.F.R. § 1630.2(j)). But here, Plaintiff's own doctor opined that Plaintiff was fit to work "with no limitations." *See* Spetzler Ltr.; Yates Decl. ¶¶ 3-4 ("Neither the tumor nor the surgery affects my ability to teach . . . [but] because of my brain tumor and surgery . . . I could not hear through my right ear."). While it is undisputed Plaintiff is partially deaf, Plaintiff identifies no evidence establishing a triable issue of fact that his partial deafness substantially limits a major life activity, including hearing or working as a teacher. On the contrary, Plaintiff testified he had never asked for nor needed accommodations prior to October 2014 because there always had been ample space between him and his students; he also contends he was able to teach at El Cerrito High School from the beginning of the school year until October 2014 without any accommodation. *See* Pl.'s Dep. at 39:11-40:17. Plaintiff testified that, due to his deafness, he "cannot hear [students] *very well*, so [he keeps] . . . turn[ing my] head constantly." *Id*. at 40:5-12 (emphasis added). Moving his students back would allow him to "hear my students *better* whenever I was asked a question by them." *Id*. at 40:14-17 (emphasis added). Thus, Plaintiff's own testimony establishes his partial hearing loss did not render him "unable to perform" his job, and did not "significantly restrict" his ability to hear. Plaintiff's testimony also establishes he could compensate for his hearing loss by turning his head. *Id*. Moreover, while Plaintiff testified it was his understanding he needed Luongo's approval to rearrange seating in his classroom to

9

ameliorate this situation, Luongo declares that is not the case. *Compare* Pl.'s Dep. at 40:22-41:5, *with* Luongo Decl. ¶ 5. Plaintiff does not argue Luongo denied him permission to rearrange his classroom; his "understanding" he needed Luongo's permission does not create a triable issue of fact that he could not rearrange student seating arrangements as he saw fit. Plaintiff also testified he did not reiterate his request to Luongo or anyone else associated with the school district. Pl.'s Dep. at 47:14-18; First Addendum at 2 ("Plaintiff followed the chain of command, and informed his supervisor his request for accommodation, after that, it is the supervisor's responsibility to contact the District. (Exhibit 15).")[3]. Plaintiff has not identified any evidence that either his hearing loss in one ear or his brain surgery substantially limits any major life activity. Based on the same evidence, Plaintiff has not established a triable issue of fact exists that he had a record of such impairments.

Second, there is no evidence before the Court that Defendant regarded Plaintiff as being disabled either by his surgery or his deafness. While a triable issue of fact exists that Luongo and Cotton were aware of Plaintiff's partial deafness and his brain surgery, there is no evidence they

---

[3] Exhibit 15 to Plaintiff's First Addendum is an unauthenticated document for which Plaintiff does not lay any foundation. Plaintiff does not establish he has personal knowledge of the document, its meaning, or its application. Without any indication this document applied to Defendant during the relevant period, Plaintiff also fails to establish the relevance of this document. Even assuming arguendo the document was admissible, the section Plaintiff highlights pertains to "Medical Inquiry and Confidentiality" and states that "[a]ll information obtained through medical inquiry or examination is kept confidential and maintained in a medical file separate from an employee's general personnel file except . . . upon receiving notice of an employee's work restrictions, the manager or supervisor shall be responsible for contacting the Assistant Superintendent of Personnel, or designee, both of whom shall, when appropriate, work with the employee to determine what accommodation is reasonable." Plaintiff's mention to Luongo that he was partially deaf does not appear to qualify as "information obtained through medical inquiry or examination." The Court addresses this document specifically, and notes that the same evidentiary objection apply to almost every single document Plaintiff attaches to his Declaration, First Addendum, Second Addendum, and Exhibits. Setting aside the impropriety of Plaintiff's multiple, mostly untimely, filings, Plaintiff fails to establish he has personal knowledge of the vast majority of the documents he has filed with the Court or that he would be competent to testify about the matters stated in those documents; he simply does not meet the requirements of Rule 56(c)(4). Unless otherwise noted here, the Court accordingly sustains Defendant's objections to Plaintiff's documentary evidence on that basis. *See* Reply, Ex. 1. Although Defendant separately filed its objections, the objections in combination with the Reply do not exceed the page limitation applicable to the Reply, and the Court therefore considers them. The Court also declines to "scour" the numerous documents Plaintiff has filed in connection with his Opposition for evidence that establishes the existence of triable issues of fact (*Keenan*, 91 F.3d at 1279), but will review the evidence Plaintiff identifies with reasonable particularity in his Opposition, Declaration, or Separate Statement.

10

(or anyone associated with Defendant) regarded Plaintiff as having an impairment that substantially limited his ability to teach. Upon receiving notice that Plaintiff's credentials had been reinstated, Cotton directed Plaintiff to return to his position at El Cerrito High School; Plaintiff instead asked for a leave of absence for personal family reasons. Cotton informed Plaintiff he did not qualify for a leave of absence and again directed him to return to his position; Plaintiff did not. After receiving Dr. Spetzler's letter stating Plaintiff was fit to work, Cotton again requested Plaintiff return to work at El Cerrito High School; Plaintiff still did not return. Cotton subsequently directed him to report to work as a substitute teacher; Plaintiff declined to accept what he believed was a demotion. Far from establishing Luongo or Cotton regarded Plaintiff as being unable to perform as a teacher, the evidence before the Court establishes Cotton repeatedly attempted to have Plaintiff honor his teaching obligations under his contract and informed him his failure to do so could be reported as abandonment to the CCTC. Plaintiff characterizes emails between Cotton and Luongo as demonstrating concerns about his brain surgery, but these emails do not mention Plaintiff's brain surgery, deafness, or any disability. *See* Yates Decl., Exs. 2-3. They only reference unspecified complaints about Plaintiff. *Id*. Plaintiff testified that Luongo's face "totally changed" after he learned of Plaintiff's brain surgery, that Luongo once came into his classroom to ask if he had forgotten a meeting, and that Luongo greeted him differently from then on. But Plaintiff did not depose Luongo, and he offers no foundation for his interpretation of Luongo's reactions. Without more, Plaintiff's testimony is conclusory, and does not, in and of itself, create a triable issue of fact that Luongo regarded Plaintiff as being disabled.

### 2. Evidence of Adverse Employment Action

Even if Plaintiff established he was disabled or regarded as disabled, there is no evidence Plaintiff suffered an adverse employment action because of his disability. Plaintiff argues he was subjected to three forms of adverse employment actions: he was demoted to substitute teacher; placed on unpaid administrative leave when he objected to the demotion; and Defendant refused to allow him to return to work until he provided a fitness to work letter from his doctor. *See* Opp'n at ECF pp. 8, 10. The evidence does not support Plaintiff's arguments:

11

- While there is evidence Plaintiff was asked to work as a substitute teacher starting on November 21, 2014, there is no evidence the change in status from full time teacher to substitute (or itinerant) teacher was due to discrimination.[4] The only evidence Plaintiff offers to support his contention that his assignment to a substitute teacher position was discriminatory is that he received news of the purported demotion the day after he informed Cotton and Whittemore that he had filed an EEOC complaint. Plaintiff identifies no documentary or testimonial evidence to support his inference that the assignment was discriminatory. (The Court addresses Plaintiff's argument that this was retaliatory below.) But there is extensive evidence before the Court establishing Cotton repeatedly requested Plaintiff return to his position as a full-time Spanish teacher at El Cerrito High School yet Plaintiff refused to do so: first refusing to return to his position after his credentials were reinstated, then resigning "for family personal reasons", then requesting a leave of absence, then rescinding his request for leave but still not returning to work at El Cerrito High School. Cotton Decl. ¶¶ 5-13. Cotton also declares she assigned Plaintiff to a substitute teacher position because Defendant had replaced Plaintiff for the permanent position as Spanish teacher at El Cerrito High School when Plaintiff refused to return to work between October and November 2014. *Id.* ¶ 16; *see also* Def.'s RFA Resp. No. 2D (Plaintiff "was asked to serve as an itinerant teacher because he had refused to return to work when directed to do so."). The fact Plaintiff learned he had been assigned to a substitute position hours after he informed Defendant he complained to the EEOC is not, in and of itself, sufficient to create a triable issue of fact in light of the record before the Court.
- Plaintiff was placed on unpaid administrative leave in October 2014 when Cotton discovered the CCTC suspended Plaintiff's teaching credentials. *See* Cotton Decl.

---

[4] The parties also dispute whether being asked to teach as a substitute or itinerant teacher constitutes a demotion, and thus, an adverse employment consequence. The Court need not reach the issue here.

12

¶¶ 5-6; Def.'s RFA Resp. No. 2F ("Defendant admits that [P]laintiff was placed on unpaid administrative leave only during periods that his teaching credential was suspended."); Def.'s Resp. to Interrog. No. 1 ("[I]n accordance with the California Education Code, [P]laintiff was not permitted to work during times his teaching credential was suspended by [the] State of California"); Yates Decl. ¶ 8 ("On October 2014, Plaintiff credential was suspended for three days, and placed on administrative unpaid leave the same month Plaintiff requested sick leave days, and was paid for the month of October 2014.").[5] Plaintiff has introduced no competent evidence there was any other cause for the leave. Moreover, Cotton placed Plaintiff on unpaid leave more than a month before Plaintiff's "demotion" to substitute teacher; the unpaid leave therefore could not be an adverse employment action taken in response to Plaintiff's objections to the demotion.

- Nor does Plaintiff create a triable issue that Defendant's request for a fitness to work letter was discriminatory. In an interrogatory response, Defendant stated Plaintiff was required to provide the letter based on the fact Luongo informed Cotton that Plaintiff said he had undergone brain surgery, "coupled with complaints that had been received from students concerning [P]laintiff's in class conduct and behavior." Def.'s Resp. to Interrog. No. 3. Plaintiff identifies no evidence to the contrary, and does not explain why the request for the letter was discriminatory.[6]

---

[5] It is unclear what Plaintiff intends to establish by stating he took "sick days" instead of being placed on unpaid leave.

[6] Plaintiff also declares that he was prohibited from teaching until he obtained the fitness-for-duty letter. *See* Yates Decl. ¶ 10 (citing Exhibit 3 as evidence that he was prohibited from returning to work until he provided letter). There is no evidence supporting this contention. Exhibit 3 is an email from Plaintiff to Whittemore, copying others associated with Defendant, in which Plaintiff states that Defendant asked him for this letter based on his brain surgery, and made a verbal promise to continue paying him under the contract for the remainder of the school year "once I provided the 'fitness' to work letter." Yates Decl., Ex. 3. To the extent Plaintiff relies on this email to prove that Defendant asked or promised him anything, the email is inadmissible hearsay. Moreover, as the facts identified above establish, Cotton directed Plaintiff to report to work numerous times between the time Luongo learned about Plaintiff's brain surgery and partial deafness, and the time Dr. Spetzler wrote the fitness for duty letter.

13

3. <u>Summary</u>

For the foregoing reasons, Plaintiff has failed to carry his burden of establishing a prima facie case of discrimination. The Court accordingly GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim, and does not need to address the remainder of Defendant's arguments.

**B.     ADA Retaliation**

To establish a prima facie case for retaliation under the ADA, Plaintiff must show he engaged in protected activity; was subject to an adverse employment action; and that there was a causal link between the adverse employment action and his protected activity. *See McGinest v. GTE Servs. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003) (Ninth Circuit applies Title VII framework to ADA retaliation claims). Upon such a showing, the burden shifts to Defendant to offer legitimate reasons for the adverse action; if Defendant makes that showing, the burden shifts back to Plaintiff to establish the proffered reasons are pretextual. "[A] adverse employment action is any action reasonably likely to deter employees from engaging in protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004).

Plaintiff identifies two protected activities in which he engaged: objecting to his demotion as a substitute teacher, and filing an EEOC complaint for discrimination on November 20, 2014. Opp'n at 9-10. He argues the adverse employment action that was connected to this protected activity was Defendant's requesting a fitness to work letter, placing him on unpaid leave and prohibiting his return to work until he returned that letter, demoting Plaintiff to substitute teacher the day after he emailed Defendant a copy of his EEOC Complaint, and threatening to report his abandonment of his position to the CCTC. *Id*. The Court already has found no causal connection exists between Plaintiff's objecting to the demotion and any of the alleged adverse employment actions he identifies. *See supra*. The Court accordingly turns to the filing of Plaintiff's EEOC complaint.

1. <u>Prima Facie Retaliation Case</u>

There is no dispute that filing a discrimination complaint with the EEOC is a protected

14

activity. While Defendant offers evidence that Plaintiff's salary and benefits were not changed when he was assigned to the substitute teacher position, the Court finds a triable issue of fact exists whether the change from permanent, full-time teacher to itinerant teacher would be the type of action that is reasonably likely to deter employees from engaging in protected activity even if their salary and benefits remained unchanged. Plaintiff also argues Defendant retaliated against his filing an EEOC complaint when Whittemore "threatened" to "report his credential" in December 2014. Opp'n at ECF p. 11; *see also* Yates Decl. ¶ 14. Reporting (or threatening to report) adverse information to a credentialing agency also would be reasonably likely to deter employees from engaging in protected activity. The timing of Plaintiff's assignment as a substitute teacher hours after he informed Defendant that he had filed an EEOC complaint, and of the "threat" to report Plaintiff to the CCTC within weeks of his filing an EEOC complaint, is sufficient to create a triable issue of fact that the action was retaliatory. *See Pardi*, 389 F.3d at 850 ("When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred.").

2. <u>Non-Discriminatory Reasons and Evidence of Pretext</u>

Plaintiff having established a prima facie retaliation case, the burden accordingly shifts to Defendant to offer a legitimate, non-discriminatory reason for its conduct. If Defendant can do so, Plaintiff must offer evidence that the proffered non-discriminatory reason is pretextual.

As described above, Defendant has offered evidence that it assigned Plaintiff to the substitute/itinerant position after Plaintiff repeatedly refused to report to work as ordered at El Cerrito High School and after Defendant hired a replacement to teach Plaintiff's Spanish classes. *See* Cotton Decl. ¶ 16; Def.'s RFA Resp. No. 2D. Plaintiff's failure to report to teach and Defendant's hiring a replacement to do so in his stead are legitimate, non-retaliatory reasons for reassigning Plaintiff to the substitute/itinerant teacher position, as his position was no longer available. Plaintiff identifies no evidence suggesting this reason is pretextual: for example, he does not identify any evidence that his prior position remained open despite his extended absence, that other full-time positions were available at El Cerrito High School at that point in the school year, or that he was qualified for any other such open positions.

15

Plaintiff also argues Defendant retaliated against his filing an EEOC complaint on November 20, 2014 by "threatening" to "report his [lack of] credential" in December 2014, "but agreed not to report it with the condition Plaintiff withdraw his EEOC complaint". Opp'n at ECF p. 11 & Yates Decl. ¶ 14 (citing *id.*, Exs. 6-7). Plaintiff further contends Whittemore "decided not to report him because Plaintiff filed a second complaint to the EEOC for retaliation." Yates Decl. ¶ 14 (citing *id.*, Exs. 8-9); Opp'n at ECF pp. 11-12. Exhibit 6 is an excerpt of the parties' Case Management Conference ("CMC") statement, which states Defendant "threatened" to report Plaintiff for mid-year abandonment of his employment contract. Opp'n, Ex. 6. But as the unabridged CMC statement makes clear, Defendant "denies it threatened" Plaintiff, and admits it offered "to waive its right to report the mid-year abandonment during settlement negotiations on the condition that plaintiff withdraw his specious EEOC discrimination charge." CMC Stmt. at 3-4, Dkt. No. 34. Exhibit 7 is an un-authenticated email for which Plaintiff establishes no foundation, and of which he has no personal knowledge. *See supra* at p. 6 n.2 (describing July 2015 Keaney email). Exhibits 8 and 9 are copies of two documents entitled "Charge of Discrimination" presented by Plaintiff to the EEOC, and received by the EEOC on December 23, 2014 and February 18, 2015, respectively. *Id*. The Charge received February 18, 2015 describes Plaintiff's allegation that Defendant "threaten[ed] to limit my future employment by reporting me to [the CCTC] for breach of contract. Respondent informed me that if I withdraw my EEOC Charge then they will not report me to CCTC." *Id.*, Ex. 9. Exhibits 8 and 9 are evidence that Plaintiff filed the charges based on the conduct he alleges in the Complaint; however, these exhibits are not competent evidence supporting his conclusory characterizations of Defendant's motivations or conduct.

On October 23, 2014, Defendant informed Plaintiff it could report him to the CCTC for abandoning his position, and that Plaintiff informed Defendant he filed an EEOC Complaint on November 20, 2014. *See supra*. *Bell asked Cotton on Plaintiff's behalf* on December 12, 2014 whether Defendant would agree to release Plaintiff from his contract without reporting him to CCTC. Cotton Decl. ¶ 17 & Ex. 13 (email from Bell asking "Would the District be willing to release [Plaintiff] from his contract without reporting such to CCTC?"). The evidence before the

16

Court thus shows that Plaintiff's own union representative asked whether Defendant would consider not reporting Plaintiff to CCTC, and that the parties explored this—and possibly other similar options—during settlement negotiations in December 2014. *See* CMC Stmt. at 3-4; *see also* Def.'s RFA Resp. No. 2E (objecting to RFA asking Defendant to "admit that a condition for not reporting plaintiff's credential to C[C]TC [in December 2014] was to drop his EEOC Complaint" on ground it invades settlement privilege). Plaintiff's declaration that Whittemore *threatened* to report Plaintiff's abandonment of his position to the CCTC *because* Plaintiff filed an EEOC complaint is conclusory and lacks foundation; on the contrary, the evidence shows the request not to report was initially made on Plaintiff's own behalf as a benefit to him during settlement negotiations. Under these circumstances, the offer not to report Plaintiff to the CCTC cannot be considered a threat, and it is therefore insufficient to create a triable issue of fact that Defendant retaliated against Plaintiff because of his EEOC complaint. Similarly, Plaintiff's declaration that Whittemore "decided" not to report him to CCTC because he filed a second EEOC complaint is conclusory, lacks foundation, and is not supported by the documentary evidence. In sum, Plaintiff identifies no evidence sufficient to show that the proffered reason, i.e., there was no threat to report Plaintiff but the possibility of foregoing doing so was discussed during the parties' settlement negotiations, is pretextual.

3. Summary

For the foregoing reasons, the Court finds no triable issue of fact exists that Defendant retaliated against Plaintiff for objecting to his demotion to substitute/itinerant teacher, or for filing an EEOC Complaint.

**CONCLUSION**

Based on the analysis above, the Court hereby GRANTS Defendant's Motion for Summary Judgment in its entirety.

17

The Court will enter a separate judgment.

**IT IS SO ORDERED.**

Dated: August 4, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge